TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
THI HOANG HO (Cal. Bar No. 293978)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0596
Facsimile: (213) 894-0141
E-mail: Thi.Ho@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHUKIMBA MALIK CARLIS,<br><br>Defendant. | No. 2:25-CR-00249-MWC-1<br><br><u>GOVERNMENT'S SENTENCING POSITION</u><br><br>Hearing Date: November 20, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Michelle Williams Court |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Thi Hoang Ho, hereby files its Sentencing Position.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities and exhibits attached thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 6, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

/s/
THI HOANG HO
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I. INTRODUCTION.........................................................1

II. STATEMENT OF FACTS...................................................2

A. Background of Defendant's Position of Trust...............2

B. The Fraudulent Scheme.................................................2

C. Defendant and Co-Defendant Herrera Charged a Total of $272,481.91 in Personal, Non-Union Expenses Without Authorization............................................................4

1. AFSCME's Financial Code Provided the Procedure for Authorization of Union Expenditures, Which Defendant Did Not Follow..........................................4

2. Local 2620 and AFSCME's Independent Audit and Findings..................................................................6

III. THE GUIDELINES RANGE...............................................8

A. Loss Amount Resulting From Defendant's Fraud..............9

1. Loss Amount Calculated by the USPO....................9

2. Loss Amount Calculated by the Government.............9

B. Abuse of Position of Trust........................................11

IV. THE GOVERNMENT'S RECOMMENDATION...............................12

V. CONCLUSION............................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Pursuant to a plea agreement between the parties, defendant Shukimba Malik Carlis ("defendant") pleaded guilty to count two of the indictment charging her with wire fraud, in violation of 18 U.S.C. § 1343 on April 10, 2026. See Dkt. 39 (Plea Agreement); Dkt. 41. Prior to the amendments to the Sentencing Guidelines on November 1, 2026, the United States Probation and Pretrial Services Office ("USPO") filed a presentence investigation report (Dkt. 44; hereinafter the "PSR") on June 18, 2026, calculating a total offense level of 16 based on the 2025 Sentencing Guidelines, and a Criminal History Category of I.

The government largely agrees with the calculation by the USPO of the total offense level and Criminal History Category (Dkt. 43). However, in light of the recent amendments to the Sentencing Guidelines, the loss amount in this case - $272,481.91 – now warrants a 10-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G), instead of the previous 12-level enhancement. Accordingly, defendant's total offense level is now 14. Based on the total offense level and defendant's Criminal History Category of I, defendant's Guidelines sentencing range is 15 to 21 months. The government recommends that defendant be sentenced to a term of imprisonment of 18 months and a three-year period of supervised release. The government further recommends that defendant be ordered to pay a fine of $10,000, a special assessment of $100, and restitution in the amount of $272,481.91.

## II. STATEMENT OF FACTS

The facts relevant to sentencing are accurately set forth in the PSR and Plea Agreement and summarized below. PSR ¶¶ 16-39; Plea Agreement ¶ 9.

### A. Background of Defendant's Position of Trust

From approximately October 2020 until September 2022, defendant served as the full-time, paid President of Local Chapter 2620 ("Local 2620") of the American Federation of State County and Municipal Employees ("AFSCME"), a labor union that represents health and social services professionals employed by the State of California. PSR ¶¶ 17-19. In March 2021, defendant appointed co-defendant Sofia Vanessa Herrera ("Herrera") as Treasurer of Local 2620. Id. ¶ 20.

As officers of Local 2620, defendant and Herrera were subject to AFSCME'S Financial Standards Code ("AFSCME's Financial Code"), Local 2620's Constitution, and Local 2620's written policy, which together provided, in pertinent part, that (1) defendant and Herrera had a fiduciary responsibility to the union and its members; (2) that personal expenses on union credit cards were strictly prohibited; and (3) that defendant and Herrera were also subject to financial reporting requirements. Id. at ¶¶ 23-25. Specifically, any individual with a union credit card was required to provide an expense report. Id. at ¶ 26.

### B. The Fraudulent Scheme

From at least as early as March 2021 and continuing through at least September 2022, in Los Angeles County, defendant knowingly and with intent to defraud, devised, participated in, and executed a scheme and artifice to obtain money and property from AFSCME and/or Local 2620 by means of materially false and fraudulent pretenses,

representations, and the omission and concealment of material facts. Id. at ¶ 28; Plea Agreement ¶ 9.

Among defendant's personal expenses, on or about March 31, 2022, defendant used AFSCME credit card ending in -8607 to purchase $2,452.80 of accessories from Louis Vuitton in Beverly Hills, California for her personal benefit unrelated to AFSCME and/or Local 2620's business. PSR ¶ 35; Plea Agreement ¶ 9.

Defendant's fraudulent scheme operated, in substance, as follows: as part of her and Herrera's roles as President and Treasurer, respectively, of Local 2620, defendant and Herrera held Mastercard Inc. credit cards in their names. PSR ¶ 21; Plea Agreement ¶ 9. Defendant held a Mastercard credit card ending in -8607, and Herrera held a Mastercard credit card ending in -8979 (together, the "AFSCME Credit Cards"). PSR ¶ 21. Defendant and Herrera used the AFSCME Credit Cards interchangeably. Id., n.2; see also Ex. F.

Although AFSCME'S Financial Code strictly prohibited the use of the union's credit cards for personal expenses (PSR ¶¶ 23-24), defendant and Herrera used the AFSCME Credit Cards to make purchases for non-AFSCME-related expenses and for their personal benefit. Id. ¶ 29; Plea Agreement ¶ 9; see also Ex. C. Defendant and Herrera then arranged for the AFSCME Credit Card bills to be paid using Local 2620's funds from Local 2620's checking account. Id. ¶ 29; Plea Agreement ¶ 9.

Although defendant had a duty to inform Local 2620's executive board and trustees about her use of Local 2620's funds, defendant omitted material facts to Local 2620 regarding her and Herrera's misuse of Local 2620 funds including by:

(1) failing to inform Local 2620 about her and Herrera's misuse of Local 2620's funds and the AFSCME Credit Cards, and failing to provide financial records to Local 2620's executive board and trustees (PSR ¶ 30; Plea Agreement ¶ 9);

(2) falsely stating that the records detailing her and Herrera's credit card purchases were not ready to be presented and that Herrera, the Treasurer, did not know how to present the records because of inadequate training (PSR ¶ 31; Plea Agreement ¶ 9) – even though defendant appointed Herrera to that position; and

(3) calling the credit card company managing the AFSCME Credit Cards to place a verbal password on the accounts so that only defendant and Herrera could access the accounts online (PSR ¶ 33).

**C. Defendant and Co-Defendant Herrera Charged a Total of $272,481.91 in Personal, Non-Union Expenses Without Authorization**

In total, defendant caused Local 2620 a total of $272,481.91 in losses, which represent expenses charged to their AFSCME credit cards, and paid for by Local 2620, for personal, non-union-related expenses. See Ex. A.

1. AFSCME's Financial Code Provided the Procedure for Authorization of Union Expenditures, Which Defendant Did Not Follow

Pursuant to AFSCME's Financial Code, "[u]nion money can only be spent with proper authorization. Authorization should be given only for expenditures that serve a legitimate union purpose." Ex. C at 10 (emphasis added). AFSCME's Financial Code sets forth the following means of authorization for union expenditures:

1. Payments required by law;

2. Payments required by union constitution, such as taxes;

3. Payments to meet contractual obligations; and

4. Payments authorized by vote of the membership, Executive Board, a committee of the Executive Board, or other delegate assembly outlined in the constitution of the affiliate. Id. at 10-11 (emphasis added).

Here, neither Local 2620 nor AFSCME authorized any of the expenditures listed in the government's calculation of the loss amount.[1] See Ex. A; see also Ex. D (Local 2620 Audit report). Specifically, defendant and Herrera did not present any of their claimed expenditures for clothing, luggage, flights, hotels, restaurants, Uber rides, claimed union-related trips, etc. to the Local 2620 membership, Executive Board, committee, or any other assembly for a vote, as required under AFSCME's Financial Code.

Furthermore, under AFSCME's Financial Code, receipts, invoices, and/or other documentation "must be maintained to support **all** disbursements." Id. at 13 (emphasis in original). Not only did defendant use her AFSCME credit card on unauthorized personal expenses, she also failed to submit any documentation to Local 2620 to justify her expenditures. See Ex. D (Local 2620's Audit Report).

In sum, defendant and co-defendant Carlis did not present their expenditures to the Local 2620 Executive Board or any other assembly within the union for approval, and they did not account for their expenditures – both requirements for valid union-related expenses.

[1] As noted above, as part of any authorization request, defendant was required to show that her expenditures had a legitimate union purpose.

Instead, they acted unilaterally, at their own discretion, and in abuse of their positions of trust and power.

2. Local 2620 and AFSCME's Independent Audit and Findings

Defendant's conduct was also independently reviewed by AFSCME's internal judicial process following an audit conducted by Local 2620. At the end of proceedings in which defendant had an opportunity to present evidence, AFSCME's judicial panel found that defendant and Herrera intentionally used union funds to enrich themselves, demonstrated complete disregard for Local 2620's governing rules and financial controls, and incurred unauthorized and undocumented expenses that did not serve a legitimate union purpose. These findings further demonstrate that defendant's conduct was not the result of mistake, misunderstanding, or poor bookkeeping, but rather a sustained abuse of authority entrusted to her by union members.

*a. Local 2620's Audit*

In October 2022, after defendant and Herrera were terminated as officers of Local 2620, the union conducted an audit of defendant and Herrera's AFSCME credit cards and expenses. See Ex. D. Local 2620's audit showed a total of $545,311.50 was charged to the AFSCME credit cards, of which "[t]here was almost no supporting documentation to support any of these credit card charges." See id. at 1.

Local 2620's audit revealed as follows:

> Our review of the charges on the statements indicate numerous personal charges with multiple high dollar charges from Amazon, Best Buy, Disney World, NYC Ballet, Broadway tickets, Tory Burch clothing, Anthropologie clothing, Nordstrom, J. Crew, Ralph Lauren, Louis Vuitton, Gucci, Christina Dior, Tiffany and Co, Marriott Marquis on Broadway in NYC, Apple Store, Afterpay and Quadpay, which are internet layaway services, Etsy, Ann Taylor, Target, Kohls, Sunglass Hut and many others.

Id. at 2. Further, the audit showed that "[h]otel and airfare charges were not supported by receipts nor any explanation of union business purpose." More specifically, Local 2620 noted:

> The Local President and Treasurer flew from Los Angeles to New York City to have an in-person meeting with Amalgamated Bank. The purpose of this meeting was to close out bank accounts, though this did not require an in-person meeting. The officers stayed at the Marriott Marquis in Times Square for a week, and per the credit card statements made credit card charges for Broadway shows and the New York City Ballet which are personal.

Id. (emphasis added).

Local 2620's audit also identified a "charge for Southwest Airlines in the amount of $287.95 for travel from Sacramento to San Diego round trip . . . for Andrew Carlis, the son of Shukimba Carlis. . . . Andrew Carlis is not a member of the Local and this charge was for personal travel." These are just a few of the hundreds of examples of defendant and Herrera's personal, unauthorized non-union-related charges.

#### b. *AFSCME's Judicial Panel Found Defendant and Carlis Improperly and Illegally Used Local 2620's Funds*

AFSCME's judicial panel also determined that defendant and Herrera caused a total loss to the union of $496,671.47. In September 2022, members of Local 2620 brought a complaint against defendant and Carlis for, inter alia, purporting to "authorize" expenses not previously approved by the Executive Board, including specifically, expenses related to defendant and Carlis's travel to New York. After a hearing in which defendant and Herrera were given the opportunity to present evidence, but chose not to, the AFSCME judicial panel found defendant and Herrera guilty of all charges and ordered that they pay restitution in the amount of $496,671.47. See

Ex. E (AFSCME Judicial Panel Decision). Specifically, AFSCME's judicial panel found as follows:

> [I]t is evident that Shukimba Carlis and Sofia Herrera intentionally used Union funds to enrich themselves and were at the very least grossly negligent with the finances of Local 2620. They showed complete disregard to the Local Constitution, the Local Credit Card Policy, and the AFSCME Financial Standards Code. . . . Their unauthorized, undocumented expenses clearly did not serve a legitimate union purpose . . . .

Id. at USAO_00000090 (emphasis added).

**III. THE GUIDELINES RANGE**

The government largely agrees with the USPO's calculation of defendant's Guidelines range.[2] Specifically, the government agrees with the USPO's calculation of the base offense level and application of the appropriate enhancements and adjustments. The government calculates defendant's Guidelines range as follows:

| | | |
|---|---|---|
| Base Offense Level | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Amount Between $250,000 and $550,000 | +10 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Abuse of Position of Trust | +2 | U.S.S.G. § 3B1.3 |
| Zero-Point Offender | -2 | U.S.S.G. § 4C1.1 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| **Total Offense Level** | **14** | |

See also PSR ¶¶ 48-74.

Defendant is in criminal history category I. Id. ¶ 80. Based on a total offense level of 14 and a Criminal History Category of I,

---

[2] As previously noted, the PSR was prepared prior to the November 1, 2026 amendments to the Guidelines. In the PSR, the USPO applied a 12-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(G). Following the amendments, § 2B1.1(b)(1)(G) now provides for a 10-level enhancement for a loss amount between $250,000 and $550,000.

defendant's Guidelines range is 15 to 21 months' incarceration and not more than 3 years of supervised release. See id. ¶¶ 135, 138; see also U.S.S.G. §§ 5A, 5D1.1, 5D1.2(a)(3); 18 U.S.C. § 3553(f).

In the plea agreement, the parties agreed that defendant's base offense level is 7, plus a two-level enhancement for abuse of a position of trust. See Plea Agreement ¶ 11. The parties reserved the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Id. As discussed below, the government has determined that the total actual loss to ASFCME/Local 2620 was $272,481.91. This loss amount was caused by defendant and co-defendant Herrera's jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in light of that criminal activity. See U.S.S.G. § 1Bl.3(a)(l).

Additionally, as discussed below, the government agrees with the application of a two-level enhancement for defendant's abuse of her position of trust as President of Local 2620.

**A. Loss Amount Resulting From Defendant's Fraud**

1. Loss Amount Calculated by the USPO

In the PSR, the USPO calculated an actual loss amount resulting from defendant and co-defendant Herrera's fraudulent scheme to be $272,481.91 and an intended loss of $387,494.68. PSR ¶ 51. Based on these amounts, the USPO applied the enhancement under U.S.S.G. § 2B1.1(b)(1)(G).

2. Loss Amount Calculated by the Government

The government submits that the total actual loss amount resulting from defendant and Herrera's fraud was $272,481.91. This amount is based on an audit, conducted by the U.S. Department of

Labor, Office of Inspector General ("DOL-OIG"), of defendant and her co-defendant Herrera's credit card transactions to determine the amount of their charged expenses that were unrelated to any valid union purposes. See Ex. A; see also U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, because the total actual loss amount is $272,481.91, the government agrees with the USPO that the enhancement under U.S.S.G. § 2B1.1(b)(1)(G) is appropriate.

The government has received documentation from AFSCME/Local 2620 that shows their calculation of the total loss from defendant and Herrera's fraud to be $496,671.47. See Ex. B. Although Local 2620 calculated a larger loss amount, the government has relied on the lower, more conservative DOL-OIG figure, determined based on its own independent audit, which included only clearly personal expenditures, such as purchases from luxury retailers and clothing stores, like Tory Burch, Nordstrom Rack, Neiman Marcus, and Louis Vuitton; high-end luggage companies; entertainment venues, such as casinos and Broadway shows; and unauthorized travel expenses. See Ex. A.

Moreover, defendant and co-defendant Herrera are jointly responsible for the total loss amount, which was incurred within the scope of their jointly undertaken criminal activity, in furtherance of that jointly undertaken criminal activity, and reasonably foreseeable in light thereof. See U.S.S.G. § 1Bl.3(a)(l). Notably, the PSR notes that defendant and Herrera used the AFSCME Credit Cards interchangeably. PSR ¶ 21, n.2. Indeed, Herrera acknowledged she and defendant used the credit cards interchangeably when shown evidence that her AFSCME Credit Card ending in -8979 was used by defendant, inter alia, on or about March 30, 2022, to purchase approximately $5,579 in luxury goods from Louis Vuitton in Beverly

Hills. See Ex. F at USAO_00005798, USAO_00005801. This purchase was *in addition to* defendant's purchase, using her issued AFSCME Credit Card ending in -8607, at Louis Vuitton on or about March 31, 2022 to purchase $2,452.80 in luxury goods – conduct for which defendant has pleaded guilty. See Plea Agreement ¶¶ 2, 9; Ex. F at USAO_00005805.

**B. Abuse of Position of Trust**

Local 2620 is a union that represents approximately 5,000 health and social services professionals employed by the State of California. PSR ¶ 19; Ex. B at 1. As public employees, AFSCME/Local 2620 members do not earn high incomes and live and work in a state with a high cost of living. Ex. B at 1. According to AFSCME/Local 2620: "When union members contribute their voluntary dues payments, they trust that the elected union officials will abide by their fiduciary obligations and only use those funds to advocate for better terms and conditions of employment. Union members do not pay their hard-earned dues to the union for officials to squander the funds on personal shopping sprees." Id. at 1-2.

Here, defendant abused her position of trust as the President of Local 2620. As President, defendant had "a fiduciary obligation to ensure that the union's assets [were] managed prudently, and all expenditures [were] only authorized for the exclusive benefit of the union and its members." Id. at 2. As noted in the PSR, defendant used the ASFCME Credit Cards to make purchases for her and/or Herrera's personal benefit, including lavish spending sprees and trips. PSR ¶¶ 29, 34-35. Defendant further abused her position of trust, and her fiduciary and reporting obligations to Local 2620, by, among other things, failing to inform the executive board about her and Herrera's misuse of the ASFCME Credit Cards, misrepresenting that

the credit card records were not ready to be presented, and calling the credit card company to place a verbal password on the accounts that only she and co-defendant Herrera could access. Id. ¶¶ 30-33.

Defendant's abuse of trust extended beyond the simple misuse of a union credit card. AFSCME's Financial Code required both authorization and documentation for union expenditures. Defendant ignored those requirements, failed to present expenditures for approval, failed to maintain supporting documentation, concealed financial records from the Executive Board, and exercised unilateral control over union funds despite her fiduciary obligation to act for the benefit of union members. These actions demonstrate a sustained abuse of authority that facilitated both the commission and concealment of the offense.

Given these facts, which demonstrate defendant's clear abuse of her position of trust as President, a two-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G) is more than appropriate.

**IV. THE GOVERNMENT'S RECOMMENDATION**

The government agrees with the recommendation of the USPO that defendant be sentenced to a mid-range sentence, namely, an 18-month term of imprisonment. The government agrees with the USPO's recommendation of a three-year term of supervised released under the conditions outlined in the USPO's recommendation letter. Dkt. 43 at 2-3. A 18-month sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

*First*, the nature and circumstances of the offense warrant the imposition of a significant custodial sentence. Defendant and her co-defendant Herrera abused their positions of trust and defrauded a

labor union whose funds they were entrusted to protect and safeguard. Defendant did not commit an isolated act of fraud. Rather, over an extended period, she exploited a position of substantial authority within a labor union representing approximately 5,000 public-sector employees and used union funds for personal expenditures, including luxury goods, entertainment, travel, and other unauthorized purchases. Defendant's conduct diverted funds entrusted to union leadership by members who paid dues with the expectation those funds would be used to advance their collective interests.

*Second*, for the same reasons, an 18-month period of incarceration reflects the serious nature of the offense, promotes respect for the law, and provides just punishment for defendant's brazen conduct.

*Third*, while the government recognizes there are mitigating factors in this case, including defendant's difficult upbringing, the latter fails to explain the offense conduct in which defendant defrauded money -- dues that she was entrusted with handling from hard-working union members -- for her own personal benefit.

*Fourth*, because the recommendation is within the Guidelines range, it will avoid sentencing disparities between similarly-situated, non-violent offenders.

Finally, defendant should be ordered to pay restitution in the amount of $272,481.91, which represents the total actual loss to the victim, ASFCME/Local 2620, a fine to the United States in the amount of $10,000, and a special assessment of $100.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that defendant be sentenced as follows: (1) an 18-month term of

imprisonment; (2) three years of supervised release; (3) a restitution order in the amount of $272,481.91; (4) an order that defendant shall pay to the United States a total fine of $10,000; and (5) a special assessment of $100.