TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
THI HOANG HO (Cal. Bar No. 293978)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0596
Facsimile: (213) 894-0141
E-mail: Thi.Ho@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHUKIMBA MALIK CARLIS,

Defendant.

No. 2:25-CR-00249-MWC-1

GOVERNMENT'S SUPPLEMENTAL BRIEF RE: SENTENCING

Hearing Date: November 20, 2026
Hearing Time: 10:00 a.m.
Location: Courtroom of the Hon. Michelle Williams Court

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Thi Hoang Ho, hereby files its Supplemental Sentencing Position.

//

//

This Supplemental Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 6, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

/s/
THI HOANG HO
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Shukimba Malik Carlis's ("defendant") sentencing hearing is scheduled for November 20, 2026. On November 6, defendant filed her sentencing memorandum in which she argues, *inter alia*, that the government has overstated the loss amount in this case to be $272,481.91 and that she should be held responsible for only $47,292.24, which she represents is the amount that can be directly attributed to her. Dkt. 63 at 3.

In connection with this unsupported theory of liability and culpability, defendant argues that "two-thirds of the counts in the indictment are charged against [co-defendant Sofia Vanessa Herrera]" and that the majority of the charges were incurred by Herrera. See id. at 4-5. Defendant also appears to argue that she is entitled to a downward departure or reduction in the loss amount because the government did not charge defendant and Herrera with conspiracy.

For the reasons shown below, defendant's arguments are meritless. *First*, the Court has already found in this case that the loss caused by defendant and Herrera's fraud scheme is $272,481.91, based on an independent audit conducted by the U.S. Department of Labor, Office of Inspector General ("DOL-OIG").

*Second*, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.3, relevant conduct for purposes of sentencing is not limited to the counts of conviction or charged conduct, and includes the following:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

> (B) in the case of a **jointly undertaken criminal activity** (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, **whether or not charged as a conspiracy**) . . . .

Specifically, the Guidelines provide that a defendant may be responsible for jointly undertaken criminal activity, e.g., a fraud scheme, as existed here between defendant and her co-defendant Herrera. Accordingly, the government maintains defendant is responsible for the entire loss amount of $272,481.91, warranting a 10-level enhancement under U.S.S.G. § 2B1.1(b)(1)(F),[1] and defendant's total offense level, after application of the appropriate adjustments and enhancements, is 14.

**II. DEFENDANT IS RESPONSIBLE FOR THE FULL LOSS AMOUNT OF $272,481.91**

On November 13, 2026, during the sentencing of co-defendant Herrera, this Court found that the loss amount in this case is $272,481.91, based on the jointly undertaken fraud scheme devised and executed by defendant and Herrera.[2] See also Dkt. 62-1 (DOL audit summary spreadsheet). The Sentencing Guidelines provide that conduct of others that is part of jointly undertaken criminal activity, as here, should be considered by the Court in sentencing a defendant so long as the acts or omissions were: (i) within the scope of the

---

[1] The government's sentencing position (Dkt. 62) mistakenly cited U.S.S.G. § 2B1.1(b)(1)(G). The appropriate enhancement falls under subsection (b)(1)(F) under the November 1, 2026 amendments to the Sentencing Guidelines.

[2] Defendant argues the Court should deduct "union related" expenses from her purported portion of the loss amount in this case. As discussed below, defendant is responsible for the full loss amount. Notwithstanding, the expenses defendant claims she personally incurred that were "union related" include purchases at Away (for high-end luggage), Anthropologie (for women's clothing), and the Apple Store, as well as expenses related to unauthorized work trips. This Court has already rejected the classification of these expenses as "union related" for purposes of determining the loss amount in this case.

jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity. U.S.S.G. § 1B1.3(a)(1)(B).

Section 1B1.3 does not require the defendant to have been convicted of multiple counts for the relevant conduct to be considered. See U.S.S.G. § 1B1.3(a)(1), Application Note 5(A); see also United States v. Fine, 975 F.2d 596, 600 (9th Cir. 1992) ("The relevant conduct provisions . . . taken together with the fraud and grouping provisions, mean that conduct which was part of the scheme is counted, even though the defendant was not convicted of crimes based upon the related conduct.").

All of the requirements to hold defendant fully responsible for the total loss amount are satisfied here.

### A. The Jointly Undertaken Criminal Activity.

The indictment in this case charged defendant and Herrera with knowingly, and with intent to defraud, devising, participating in, and executing a scheme to defraud Local Chapter 2620 ("Local 2620") of the American Federation of State, County and Municipal Employees ("AFSCME"), a labor union that represents health and social services professionals employed by the State of California. See Dkt. 1; PSR ¶¶ 17-19.

Defendant admitted to her participation in this fraudulent scheme in her plea agreement. See Dkt. 39 at 6-7. Specifically, defendant admitted as follows:

> Beginning on an unknown date but no later than in or about March 2021, and continuing through at least in or about September 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and with intent to defraud, devised, participated in, and executed a scheme and artifice to obtain money and property from the American Federation of State County and Municipal

> Employees ("AFSCME") – a labor union – and AFSCME Local Chapter 2620 ("Local 2620") by means of materially false and fraudulent pretenses, representations, and the omission and concealment of material facts. . . .
>
> Defendant's fraudulent scheme operated, in substance, as follows: as part of her role as the Local 2620 executive board president, defendant held a Mastercard Inc. credit card in her name that could be used for purchases related to AFSCME and Local 2620 and was strictly prohibited for personal use by AFSCME's Financial Standards Code. Defendant instead used the credit card to make purchases for non-AFSCME-related expenses and for her personal benefit. Defendant then arranged for the AFSCME credit card bills – including purchases made for her personal benefit – to be paid using Local 2620's funds from Local 2620's checking account.
>
> Although defendant had a duty to inform Local 2620's executive board and trustees about her use of Local 2620's funds, defendant omitted material facts to Local 2620 regarding her misuse of Local 2620 funds including by: (1) repeatedly failing to provide financial records to Local 2620's executive board and Local 2620's trustees; (2) failing to comply with AFSCME policy to ensure that the records detailing her credit card purchases were presented by the treasurer Sofia Vanessa Herrera; and (3) failing to ensure that credit card statements were mailed to Local 2620's offices.

Id. (emphasis added).

Defendant and Herrera's fraudulent scheme is also set forth in the PSR. Dkt. 70 ("PSR") ¶¶ 28-38. Defendant and Herrera's personal, non-union-related expenses were clearly within the scope of this scheme. Indeed, those expenses were the intended purpose of the scheme, and defendant admitted as much. Dkt. 39 at 7 ("Defendant instead used the credit card to make purchases for non-AFSCME-related expenses and for her personal benefit.").

**B. Defendant and Herrera Both Acted in Furtherance of the Scheme.**

Defendant did not just use union funds for her own personal benefit, she purposely and intentionally hid her and Herrera's fraud from the union, thereby aiding and abetting Herrera's fraud and

furthering their joint fraudulent scheme. Specifically, defendant falsely stated that the records detailing her and Herrera's credit card purchases were not ready to be presented and that Herrera, *the treasurer defendant appointed* (id. ¶ 20), did not know how to present the records because of inadequate training – when, in reality, Herrera did not provide the statements because they showed unauthorized purchases by both herself and defendant. Id. ¶ 31. Defendant and Herrera also blocked requests from a Local 2620 trustee to review the union's financial records, even going so far as to suspend the trustee and prohibit them from engaging in AFSCME-related business and activities. Id. ¶ 32. Finally, defendant and Herrera placed a verbal password on the credit card accounts so that only they could access the accounts. All of these actions were intended to conceal and further the fraud scheme.

### C. Herrera's Use of Union Funds for Personal Expenses Was Reasonably Foreseeable to Defendant.

Defendant and Herrera's use of the AFSCME credit cards for personal expenses was within the scope – and indeed, the intended purpose – of their fraudulent scheme. Accordingly, it was reasonably foreseeable to defendant that Herrera would use her AFSCME credit card for personal expenses, including expenses that defendant did not personally incur.

Nevertheless, defendant likely had actual knowledge of most – if not all – of Herrera's personal charges on Herrera's AFSCME-issued credit card. As noted above and in the PSR, defendant and Herrera restricted access to Local 2620's credit card accounts such that only they had access to credit cards statements – which showed their fraudulent personal charges.

The PSR also reflects that defendant and Herrera "took trips together, bought clothing together, and dined together while using the AFSCME credit cards for their personal use." PSR ¶ 34 (emphasis added). This is borne out by evidence showing that both defendant and Herrera used union funds to go on an unauthorized trip to New York (which included excursions to the New York City ballet and Broadway) (see Dkt. 62-1), and that defendant and Herrera used each other's AFSCME-issued credit cards, including (but not limited to) a multiday shopping spree at Louis Vuitton (see Dkt. 62-6).[3]

Application Note 4(C) to U.S.S.G. § 1B1.3, which provides illustrations of conduct for which a defendant is accountable, is on point and instructive:

> Defendants F and G, working together, design and execute a scheme to sell fraudulent stocks by telephone. Defendant F fraudulently obtains $20,000. Defendant G fraudulently obtains $35,000. Each is convicted of mail fraud. Defendants F and G each are accountable for the entire amount ($55,000). Each defendant is accountable for the amount he personally obtained under subsection (a)(1)(A). Each defendant is accountable for the amount obtained by his accomplice under subsection (a)(1)(B) because the conduct of each was within the scope of the jointly undertaken criminal activity (the scheme to sell fraudulent stocks), was in furtherance of that criminal activity, and was reasonably foreseeable in connection with that criminal activity.

Here, the plain text of § 1B1.3, as well as the commentary thereto, provide that defendant is accountable for the entire loss amount of $272,481.91. This is also supported by well-established case law. See, e.g., United States v. Han, 551 F. App'x 422, 424

---

[3] Defendant has pleaded guilty to Count Two of the Indictment, namely, the March 31, 2022 purchase at Louis Vuitton in the amount of $2,452.80, which appears to be part of this shopping spree. Receipts show Herrera's AFSCME credit card ending in -8979 was used by Carlis, or an account held by Carlis, at Louis Vuitton the day before, March 30, 2022. Dkt. 62-6.

(9th Cir. 2014) (finding defendant-appellant was responsible for the "full scope of the scheme's losses, irrespective of his involvement in the counterfeit checks").

**III. CONCLUSION**

For the foregoing reasons, the government respectfully maintains that the loss amount in this case is $272,481.91 and that defendant should be held accountable for this full amount.

The government recommends that defendant be sentenced as follows: (1) an 18-month term of imprisonment; (2) three years of supervised release; (3) a restitution order in the amount of $272,481.91; (4) an order that defendant shall pay to the United States a total fine of $10,000; and (5) a special assessment of $100.